**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

TERRY MOHORNE,

    Plaintiff,

vs.

DEERE & COMPANY,

    Defendant.

No. 13-CV-2086-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *1* |
| **II.** | **RELEVANT PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . | *2* |
| **III.** | **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . | *2* |
| **IV.** | **RELEVANT FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . | *3* |
| | *A.*     *The Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *3* |
| | *B.*     *Mohorne's Injury and Treatment* . . . . . . . . . . . . . . . . . . . . . . . . | *4* |
| | *C.*     *Mohorne's Application for LTD Benefits* . . . . . . . . . . . . . . . . . . . | *6* |
| | *D.*     *Deere's Denial of Mohorne's LTD Benefits* . . . . . . . . . . . . . . . . . | *7* |
| | *E.*     *Mohorne's Appeal of Deere's Denial* . . . . . . . . . . . . . . . . . . . . . | *7* |
| **V.** | **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *9* |
| **VI.** | **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *11* |
| | *A.*     *Substantial Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *12* |
| | *B.*     *Failure to Consider ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . | *14* |
| **VII.** | **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *16* |

## *I. INTRODUCTION*

The matter before the court is Plaintiff Terry Mohorne's ("Mohorne") Amended Complaint (docket no. 26).

## II. RELEVANT PROCEDURAL BACKGROUND

On December 31, 2013, Mohorne filed a complaint (docket no. 2), alleging that Defendant Deere & Company's ("Deere") successor in interest, United Healthcare Services Company of the River Valley, wrongfully denied Mohorne's claim for long-term disability ("LTD") benefits under the John Deere Long Term Disability Plan for Salaried Employees ("Plan"), thereby violating the Employee Retirement Income Security Act of 1974 ("ERISA"). On March 4, 2014, United Healthcare filed an answer asserting that Deere was the proper defendant. United Healthcare Answer (docket no. 13). On April 4, 2014, United Healthcare moved to join Deere as a defendant (docket no. 14). On May 22, 2014, Deere was added as a defendant in the instant action. *See* May 22, 2014 Order (docket no. 21). On June 16, 2014, Mohorne filed the Amended Complaint ("Complaint"), including allegations against both United Healthcare and Deere. On June 27, 2014, United Healthcare filed an Answer to the Complaint (docket no. 30). On August 5, 2014, Deere filed an Answer to the Complaint ("Answer") (docket no. 34). On April 7, 2015, United Healthcare was dismissed from the instant action. *See* April 7, 2015 Order (docket no. 41).

On May 7, 2015, Mohorne filed her brief ("Mohorne Brief") (docket no. 49). On June 18, 2015, Deere submitted a brief in opposition ("Deere Brief") (docket no. 52). On June 25, 2015, Mohorne filed a Reply (docket no. 53). Neither party requests oral argument, and the court finds that oral argument is unnecessary. The case is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over this action, which arises under ERISA, 29 U.S.C. § 1132. *See also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## IV. RELEVANT FACTUAL BACKGROUND

### A. *The Plan*

In 1983, Mohorne began working for Deere. Administrative Appeal Record ("AR") (docket no. 43) at 62. In 2005, Mohorne was employed by Deere[1] as a Technical Analyst/Coordinator of Medical Claims or Claims Supervisor. Complaint ¶¶ 17-18. Mohorne's job was classified as a sedentary, skilled work position. *Id.*

During all times relevant to this action, Mohorne was a Plan beneficiary eligible to apply for LTD benefits under the Plan. *See* AR at 6. Deere was the Plan Administrator and paid for Plan benefits. *Id.* at 3-4. To qualify for LTD benefits under the Plan, an employee must be totally disabled. *Id.* at 7. "An employee is deemed to be totally disabled when on evidence satisfactory to [Deere] and [Deere's] Medical Director, the employee is unable to perform the duties of the assigned job due to a physical or mental condition caused by illness or injury." *Id.* Employees applying for LTD benefits are required to provide Deere "with proof of continued disability . . . [which] may include information such as . . . statements from physicians outlining prior treatment and ongoing treatment for the disability." *Id.* at 9.

If Deere denies LTD benefits, the employee may appeal. *Id.* at 12. During review of the appeal, the Plan requires Deere to consider "all comments, documents, records, and other information, without regard to whether such information was submitted or considered in the initial claim decision. The review of [the] claim denial will not defer to the initial determination made by the Plan Administrator . . . ." *Id.* If the appeal requires consultation with a physician, the physician consulted will not be the same physician involved in the original claim review. *Id.*

---

[1] Mohorne's employer was John Deere Health, a Deere & Company subsidiary. To avoid confusion, the court shall refer to both Deere & Company and John Deere Health as "Deere."

## B. *Mohorne's Injury and Treatment*

On December 18, 2005, Mohorne was involved in a car crash in Waterloo, Iowa.[2] *Id.* at 83. Mohorne was sitting in the passenger seat of a car traveling five miles per hour. *Id.* Her car was hit head-on by another vehicle, which was traveling at an unknown speed. *Id.* Within twenty-four hours of the crash, Mohorne began experiencing back pain and pain and weakness in her left leg. *Id.* Mohorne went to urgent care where physicians prescribed pain pills and muscle relaxers but performed no diagnostic studies. *Id.* Sometime in January 2006, Mohorne saw her primary care physician, Dr. Deters, and complained of continued pain. *Id.* Dr. Deters referred Mohorne to physical therapy and she continued working. *Id.* On February 2, 2006, Dr. Deters signed a note that stated Mohorne should be excused from work until at least February 27, 2006, because of back and leg pain. *Id.* at 51. Beginning on February 3, 2006, Mohorne did not attend work. *Id.* at 35, 51.

From February 3, 2006 to February 27, 2007, Deere paid Mohorne and continued her benefits under Deere's short-term disability benefits program for salaried employees, which is called "salary continuation." *See id.* at 35. Employees seeking salary continuation are required to submit to Deere periodic reports from their treating physicians and grant Deere access to all treatment records. *See, e.g.*, *id.* at 16, 37, 54-58, 80, 111-12, 114-15. In February, March, April and May 2006, Mohorne's reports were submitted by Dr. Deters. *Id.* at 54-57. Each report stated that Mohorne's pain made her unable to return to work. *Id.* At some point between February and May 2006, Mohorne was seen by Dr. Headlam, a physical medicine rehabilitation specialist. *Id.* at 46. An MRI of Mohorne's back indicated a bulged disc but no other pathology. *Id.* Dr. Headlam gave Mohorne an epidural steroid injection, but it did not alleviate her symptoms. Instead, her

---

[2] Mohorne also states that she was in an earlier car crash sometime in 2003, the details of which are unclear. Reply at 1; *see also* AR at 28-29.

symptoms increased. *Id.*

In June 2006, Mohorne's monthly medical report was submitted to Deere by Dr. Lederman, who was then directing her care. *Id.* at 46, 58. Lederman referred Mohorne for three additional epidural injections, none of which definitively treated her pain. *Id.* at 46, 83. Additionally, Dr. Lederman referred Mohorne for electrodiagnostic studies, the results of which were reportedly normal. *Id.* at 83. Dr. Lederman's June report to Deere also stated that Mohorne would not be able to return to work until she met with Dr. Federhoffer, a pain specialist. *Id.* at 58. On July 11, 2006, Dr. Lederman's nurse informed Deere that Lederman found Mohorne unable to work pending Dr. Federhoffer's diagnosis. *Id.* at 40. Mohorne met with Dr. Federhoffer on July 27, 2006. *Id.* at 37. Dr. Federhoffer reported to Deere that Mohorne could return to work immediately, with some restriction. *Id.* On July 28, 2006, Mohorne sent Federhoffer a letter:

> I would like to thank you for agreeing to see me as your patient. Since my last visit I have decided not to become a patient of yours. It seems as though you already had your mind made up concerning my disability and return to work. I see my employer had already contacted you and this is probably why you already had made the decision prior to my visit. Therefore I would like to revoke all authorizations I have signed, to Deere Disability, Covenant Hospital and Allen Hospital and/or Iowa Health Systems.

*Id.* at 59 (formatting omitted). Mohorne did not return to work. *Id.* at 39. On August 14, 2006, Dr. Lederman notified Deere that Mohorne was still unable to return to work. *Id.* at 48. Deere scheduled an examination for Mohorne with Dr. Broghammer, a Deere company doctor, for August 14, 2006. *Id.* at 49. At the examination, Mohorne told Dr. Broghammer that her symptoms had not changed since January 2006 and that she continued to have back pain occasionally radiating to the knee. *Id.* at 45-47. Dr. Broghammer informed Mohorne that the MRI showing a bulged disc was "essentially a normal finding and she really has no pathology in her back . . . ." *Id.* at 46. Dr.

5

Broghammer opined that no surgical intervention was appropriate and that Mohorne "should be able to return to full and unrestricted activity at this time." *Id.* at 47. Dr. Broghammer submitted his report to Deere on August 17, 2006.

Mohorne also applied for disability benefits from the Social Security Administration ("SSA"). On August 16, 2006, the SSA denied her claim for benefits. *See id.* at 88-90. On September 5, 2006, Mohorne sought treatment at Black Hawk-Grundy Mental Health Center for depression, which she said started after her 2003 car crash. *Id.* at 28. On September 7, 2006, Deere requested an independent medical evaluation ("IME") of Mohorne's condition. *Id.* at 35. No IME was forthcoming. Mohorne remained away from work and on salary continuance benefit. On October 11, 2006, Dr. Lederman reported that Mohorne could return to work on November 2, 2006. *Id.* at 112-13. Then, on November 8, 2006, Dr. Lederman informed Deere that Mohorne could resume work instead on December 28, 2006. *Id.* at 114. On December 1, 2006, James Harding, a clinical psychologist at Black Hawk-Grundy Mental Health Center, informed Deere that "[d]ue to a combination of medical problems and psychiatric problems, [Mohorne] has severe chronic pain. [T]he pain is severe enough that she is not currently able to work." *Id.* at 115. On December 21, 2006, after filing a request for reconsideration of the denial of disability benefits from the SSA, Mohorne's SSA claim was denied again. *See id.* at 92-94. On January 9, 2007, Black Hawk-Grundy staff reported to Deere that Mohorne would be unable to return to work for at least three months. *Id.* at 16.

On January 24, 2007, Deere informed Mohorne that her salary continuance benefit would end on February 28, 2007. *Id.* at 87. To continue benefits, Mohorne was required to apply for LTD benefits under the Plan. *Id.* Mohorne timely applied.

### C. *Mohorne's Application for LTD Benefits*

Following her application for LTD benefits, Mohorne was required to undergo the previously-requested IME. The IME was performed on February 22, 2007 by Dr. Robert

6

Rondinelli. *See id.* at 81-86. Dr. Rondinelli found that Mohorne's pain was probably "not due to a demonstrable physical impairment" and that there was "no medical contraindication to [Mohorne] engaging in sedentary or light-to-sedentary work at the present time." *Id.* at 81. However, Dr. Rondinelli also noted that "for reasons which have not been fully elucidated and which are likely of a psychological nature, I do not believe [Mohorne] will be able to be at work and remain at work in a productive capacity at this time." *Id.* Accordingly, Dr. Rondinelli advised that Mohorne receive a "neuropsychological evaluation and diagnostic testing to rule out psychological barriers to recovery, to assess treatment strategies to neutralize said barriers as exist, and to prognosticate as to whether [Mohorne] can return to gainful employment in the near future if said barriers are neutralized." *Id.* at 82.

### D. Deere's Denial of Mohorne's LTD Benefits

On March 15, 2007, Deere's medical director, Dr. Greene, reviewed the IME and recommended that Mohorne's application for LTD benefits be denied. *Id.* at 80. On March 26, 2007, Deere denied Mohorne's application for LTD benefits. *Id.* at 140. Deere's reason for denial was that Mohorne's "medical condition [did] not meet the LTD Plan requirements for eligibility." *Id.* Deere cited the Plan's requirement that the applicant "must be totally disabled and unable to perform the duties of the assigned job due to a physical or mental condition caused by illness or injury." *Id.* To receive LTD benefits, Deere told Mohorne she would have to produce "[e]vidence satisfactory to [Deere] that [she is] totally disabled and unable to perform the duties of [her] previously assigned job due to a physical or mental condition caused by illness or injury." *Id.*

### E. Mohorne's Appeal of Deere's Denial

On May 3, 2007, Mohorne informed Deere through counsel[3] of her intent to appeal

---

[3] The court notes that Mohorne was represented by different counsel during the
(continued…)

7

the denial of LTD benefits. *Id.* at 266. On June 20, 2008, Mohorne's counsel sent Deere additional medical records from Black Hawk-Grundy Mental Health Center. *Id.* at 242-52. Those medical records, which were dated June 12, 2008, indicate that Mohorne was diagnosed with: (1) "Major Depressive Disorder, moderate, chronic without psychotic features . . . ."; (2) "Pain Disorder [a]ssociated with both psychological factors and general medical condition . . ."; and (3) "Parent-child Relational Problem . . . ." *Id.* at 243. The records also contain updated information on Mohorne's medications and notes from therapy sessions authored by her clinical psychologist. *Id.* at 249-52.

On July 2, 2008, Deere's Director of Enterprise Health and Medical Services, Dr. Marleece Barber, reviewed Mohorne's medical records and recommended that Mohorne's appeal be denied. *Id.* at 138. On July 31, 2008, Deere denied Mohorne's appeal and affirmed denial of LTD benefits. *Id.* at 137. Deere's denial letter cited evidence that "there is not a disabling condition that would have prevented . . . Mohorne's return to work . . . Mohorne was and remains not eligible for benefits under the Plan." *Id.*

On August 28, 2008, Mohorne's counsel requested that Deere reconsider its denial of LTD benefits. Though a copy of that letter is not part of the Administrative Record, the court infers from Deere's response that Mohorne's counsel submitted additional evidence of Mohorne's disability. *See id.* at 133-34. After Mohorne's information was reviewed again by Deere's medical director, Deere reaffirmed its denial of Mohorne's appeal. Deere reiterated that Mohorne did not meet the Plan's definition of "totally disabled" and was therefore ineligible for LTD benefits. *Id.*

Mohorne appealed her Social Security case to an administrative law judge ("ALJ"), pursuant to SSA procedures. *See id.* at 93. On November 5, 2008, ALJ Marilyn Hamilton ruled that Mohorne was eligible for Social Security disability benefits. *Id.* at

---

[3](…continued)
administrative appeal and the instant action.

203-12. The ALJ found that Mohorne's "residual functional capacity is reduced below the level necessary to perform sedentary work" and that Mohorne was "unable to perform any past relevant work." *Id.* at 209, 211. The ALJ found that Mohorne had been disabled since April 9, 2007, which was the day Mohorne attained age fifty.[4] *Id.* at 207, 212.

On November 13, 2008, Mohorne again requested Deere reconsider its denial of LTD benefits. *Id.* at 202. On December 12, 2008, Deere denied reconsideration. *Id.* at 201. Deere noted that "recognition of a disability by the Social Security Administration does not determine eligibility for a benefit under the . . . Plan. Eligibility for benefits under the . . . Plan is governed by the Plan requirements, terms, conditions, and limitations as well as a determination by the John Deere Medical Director." *Id.* Deere reiterated that it found Mohorne was not disabled on February 28, 2007, the relevant date for determining her LTD eligibility. *Id.*

## V. STANDARD OF REVIEW

A district court must review a denial of benefits "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (formatting omitted). "When a plan reserves discretionary power to construe uncertain terms or to make eligibility determinations . . . the administrator's decision is reviewed only for abuse . . . of his discretion by the district court." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010) (quoting *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005)) (quotation marks omitted) (alterations in original). "This deferential

---

[4] The court notes that the SSA medical-vocational guidelines place significant weight on the applicant's age. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 2. It appears that Mohorne relied on this date on the advice of counsel. *See* AR at 207 ("After consultation with her representative, the claimant has amended the alleged onset date of disability to April 9, 2007").

9

standard reflects [the] general hesitancy to interfere with the administration of a benefits plan." *Shelton v. ContiGroup Cos.*, 285 F.3d 640, 642 (8th Cir. 2002) (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)).

Here, the Plan gives Deere discretion to construe the terms and determine eligibility for benefits: "An employee is deemed to be totally disabled when on evidence satisfactory to [Deere] and [Deere's] Medical Director, the employee is unable to perform the duties of the assigned job due to a physical or mental condition caused by illness or injury." AR at 7; *see also Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 803 (8th Cir. 2014) (holding that the phrase "satisfactory to Prudential" conferred discretion on the plan administrator); *Walke v. Grp. Long Term Disability Ins.*, 256 F.3d 835, 839 (8th Cir. 2001) (noting that a plan provision requiring employees to submit "proof 'satisfactory to [the plan administrator]' . . . [is] no different" than other discretion-conferring language). Because the Plan gives Deere discretion, the abuse-of-discretion standard applies.

Under the abuse of discretion standard, the court "must uphold [the plan administrator's] decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence." *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014). To determine whether a plan administrator's decision is reasonable, courts evaluate the following factors: (1) "whether [the Plan's] interpretation is consistent with the goals of the Plan"; (2) "whether [the Plan's] interpretation renders any language in the Plan meaningless or internally inconsistent"; (3) "whether [the Plan's] interpretation conflicts with the substantive or procedural requirements of the ERISA statute"; (4) "whether [the Plan has] interpreted the words at issue consistently"; and (5) "whether [the Plan's] interpretation is contrary to the clear language of the Plan." *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). The court must affirm the Plan's decision "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached

10

that decision." *Prezioso*, 748 F.3d at 805 (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). Additionally, only the evidence available to the Plan Administrator at the time of benefits denial is relevant to the court's review. *See King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005). Additionally, "[w]here a fiduciary both evaluates claims for benefits and pays benefits claims, the court still applies the deferential abuse-of-discretion standard, but the fiduciary's conflict of interest is one factor to be considered in the review." *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 601 (8th Cir. 2014).[5]

## *VI. ANALYSIS*

Mohorne argues that Deere's decision to deny her LTD benefits was an abuse of discretion because Deere's decision was not supported by substantial evidence and Deere failed to consider the ALJ's contrary decision regarding Mohorne's disability. *See* Mohorne Brief at 10-13. Deere argues that it did not need to consider the ALJ's decision and its decision to deny benefits is supported by substantial evidence. *See* Deere Brief at 9-12. The court will address each argument in turn.

---

[5] In the Complaint, Mohorne argues that "[b]ecause of the conflict of interest . . . [Deere's] decision(s) to deny disability benefits should be reviewed . . . under a de novo standard of review." *See* Complaint ¶ 13 (formatting omitted). Furthermore, Mohorne argues that the Plan does not contain the necessary language granting the Plan discretion, or that such language is "so vague as to be legally defective." *Id.* ¶ 15. Mohorne appears to have abandoned these arguments in her briefs, arguing only that the court should give the conflict of interest factor due weight. *See* Mohorne Brief at 8-10. Out of an abundance of caution, the court finds that the Plan's provision stating that "[a]n employee is deemed to be totally disabled when on evidence satisfactory to [Deere] and [Deere's] Medical Director, the employee is unable to perform the duties of the assigned job due to a physical or mental condition caused by illness or injury" constitutes "discretion-granting language." *See* AR at 7; *Prezioso*, 478 F.3d at 802-03 (quoting *Hankins v. Standard Ins. Co.*, 667 F.3d 830, 835 (8th Cir. 2012)) (stating that language requiring an employee to "submit 'written proof of continued total disability . . . satisfactory to [the plan administrator]' was sufficient to trigger abuse of discretion review" (quoting *Ferrari*, 278 F.3d at 806) (alterations in original)).

11

## A. *Substantial Evidence*

Mohorne argues that Deere's denial of LTD benefits was based on less than substantial evidence. Substantial evidence is "more than a scintilla but less than a preponderance." *Smith v. UNUM Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir. 2002) (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000)). "A reviewing court may consider both the quantity and quality of evidence before a plan administrator. When a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the employee is not disabled." *Id.* (citation omitted).

The court finds that Deere's denial of benefits was supported by substantial evidence. Three doctors, including one of Mohorne's own choosing, found that Mohorne was capable of returning to work. Dr. Federhoffer, a pain specialist, reported in July 2006 that Mohorne could return to work with some restriction. *See* AR at 37. Dr. Broghammer reported in August 2006 that Mohorne was able to return to work immediately. *See id.* at 47. An independent medical evaluation conducted by Dr. Rondinelli in February 2007 concluded that there were no physical barriers preventing Mohorne from returning to work, but noted that "for reasons which have not been fully elucidated and which are likely of a psychological nature," he did not think she could return to work at "a productive capacity at this time." *Id.* at 81-82. Moreover, none of Mohorne's treating physicians, including those that told Deere that Mohorne must be temporarily excused from work, opined that Mohorne was "totally disabled." Several of Mohorne's treating physicians found that she was either immediately able to return to work or would become able to do so at some future date. *See, e.g.*, *id.* at 37, 47, 58. To the extent that there was a conflict of medical opinions over Mohorne's disability, that conflict did not pertain to whether Mohorne was totally disabled, it pertained to when Mohorne could return to work.

Aside from the fact that Mohorne's treating physicians had not opined that she was

totally disabled, Deere's denial of benefits would still be supported by the opinions of Deere's own medical personnel. Dr. Greene recommended that Deere deny LTD benefits because Mohorne did not suffer from a qualifying medical condition. *Id.* at 80. On administrative appeal, Deere's medical director agreed that "there was not a disabling condition that would have prevented . . . Mohorne's return to work." *Id.* at 138. Deere was entitled to give the opinions of its reviewing physicians precedence. "When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006); *see also Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005) ("The 'treating physician rule'—that opinions of treating physicians must be accorded special weight—does not apply to disability benefit determinations under plans governed by ERISA."). Here, the record supports denial. Dr. Federhoffer and Dr. Broghammer found that Mohorne did not have a disabling medical condition. Furthermore, the IME did not find that Mohorne was totally disabled, concluding only that she was "unlikely to be able to effectively be at work . . . for any extended period of time," but that the medical basis for this inability was "unclear." *Id.* at 81. Viewing the record as a whole, the court finds that Deere did not abuse its discretion when it followed the advice of its own medical personnel in concluding that Mohorne was not eligible for benefits.

Mohorne argues that Deere should have ordered additional testing to determine the extent of Mohorne's "psychological factors preventing . . . Mohorne from working." *See* Mohorne Brief at 11-12. This argument is unavailing. If Mohorne desired additional evaluation and testing, she was free to seek such testing and submit the results to Deere. In fact, the Plan requires employees seeking LTD benefits to submit medical evidence to Deere and explicitly provides an opportunity to present Deere with additional evidence during the administrative appeal. *See* AR at 12 ("You may submit written comments,

documents, records, and other information relating to the claim to the Plan Administrator . . . ."). Moreover, at the time of her application for LTD benefits, Mohorne was undergoing regular mental health treatment at Black Hawk-Grundy Mental Health, the records of which Deere considered during Mohorne's administrative appeal.

The court must also consider whether a conflict of interest colored Deere's denial of benefits. A conflict of interest exists because Deere both administered the Plan and paid for Plan benefits. Any such conflict of interest must be considered as a factor in determining whether Deere abused its discretion. *Hampton*, 769 F.3d at 601; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 115-19 (2008). The court finds no evidence that the conflict of interest improperly influenced Deere's denial of LTD benefits. *See Hampton*, 769 F.3d at 601 ("[T]his is not the sort of case in which the fiduciary's conflict likely was determinative."). Here, Deere relied on the advice of its medical personnel, who in turn relied on the IME and medical evidence provided by Mohorne's treating physicians. As discussed previously, Deere's reliance on its medical personnel was not an abuse of discretion because the medical evidence supported a reasonable determination that Mohorne was not totally disabled. This is not the type of close case in which the conflict of interest factor dictates an outcome adverse to the conflicted party. *See id.* at 601. Accordingly, the court finds that Deere did not abuse its discretion by denying Mohorne's application for benefits based on medical opinions.

### B. Failure to Consider ALJ's Decision

Mohorne argues that "Deere's decision to deny benefits to [her] was arbitrary and capricious" because Deere failed to consider the ALJ's decision granting Mohorne Social Security benefits. Mohorne Brief at 10-11. Deere argues that it was justified in not considering the ALJ's decision because: (1) the ALJ issued her decision after Deere's denial; (2) the ALJ found that Mohorne was totally disabled beginning on April 9, 2007, whereas Mohorne's coverage under the Plan ended on February 28, 2007; and (3) "an

ERISA plan administrator . . . generally is not bound by an SSA determination that a plan participant is disabled . . . ." Deere Brief at 10 (quoting *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 975 (8th Cir. 2003)) (quotation marks omitted).

Deere's failure to consider Mohorne's favorable SSA decision does not render its decision "arbitrary or capricious." Mohorne did not submit the ALJ's decision to Deere until after her administrative appeal was over. Deere had already denied Mohorne's LTD claim, denied her appeal and reconsidered her appeal prior to receiving the ALJ's decision. Second, the Eighth Circuit has repeated held that "[p]lan administrators are not bound by SSA findings of disability." *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012). This is true "even when the plan's definition of disabled is similar to the definition SSA applied." *Farfalla*, 324 F.3d at 975. Here, the Plan and the ALJ set out different criteria for determining benefit eligibility. And, even if the Plan and SSA had similar definitions of total disability, the ALJ's decision would still not be binding on Deere. *See Farfalla*, 324 F.3d at 975.

Furthermore, Mohorne's submission of the SSA decision was untimely. Mohorne's administrative appeal of Deere's denial of benefits concluded on July 31, 2008. *See* AR at 137. She submitted the ALJ's decision to Deere on November 13, 2008. *See id.* at 202. However, even if Deere had agreed to reopen Mohorne's appeal, which it was not required to do under the Plan, the ALJ's decision contained no new medical information of which Deere was unaware. *See Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 798 (8th Cir. 2002) ("The determination that [a claimant] suffers from a pain-based disability under Social Security regulations does not require [a plan administrator] to reach the same conclusion."). Therefore, because Mohorne did not submit the ALJ's decision to Deere until after the administrative proceedings were concluded and because Deere is not bound by the SSA decision, Deere's decision was not arbitrary and capricious even in light of the ALJ's decision granting benefits to Mohorne. Accordingly, Deere did not abuse its

15

discretion by denying Mohorne's application for benefits, despite the ALJ's decision regarding Social Security disability benefits.

## VII.  CONCLUSION

In light of the foregoing, Deere's decision denying benefits is **AFFIRMED**.  The Clerk of Court is **DIRECTED** to enter Judgment in favor of Defendant Deere & Company and against Plaintiff Terry Mohorne and to **CLOSE THIS CASE**.

**IT IS SO ORDERED**.

**DATED** this 14th day of April, 2016.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA